**Ronald ARRESKJOLD, Petitioner,**

v.

**UNITED STATES OF AMERICA, Respondent.**

**Case No. 09–20293–CV, 06–20445–CR.**

United States District Court, S.D. Florida.

April 14, 2010.

Order Denying Certificate of Appealability June 21, 2010.

---

Anne Ruth Schultz, United States Attorney's Office, Miami, FL, Thomas Pinder, United States Attorney's Office, Miami, FL, Lead Attorney, Attorney to be Noticed, for USA.

Ronald Aareskjold, LSCI—Butner, Butner, NC, for Petitioner, pro se.

## ORDER DENYING MOTION TO VACATE SENTENCE

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Magistrate Judge Patrick A. White's Report and Recommendation (DE # 16) on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (DE # 1),[1] brought pursuant to 28 U.S.C. § 2255. Petitioner has filed Objections (DE # 17). After careful consideration and a *de novo* review of the record, the Court ultimately agrees with Judge White that the Motion should be denied. However, the Court reaches that result through different reasoning, and writes separately to clarify the decision.

## I. Introduction

Petitioner pled guilty in Case No. 06–CR–20445 to conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and operating an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960. As part of his plea agreement, he waived his right to appeal, and accordingly did not file a direct appeal. Several months after he was sentenced, the Supreme Court decided *United States v. Santos,* 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008), which narrowed the definition of the word "proceeds" in the money laundering statute by holding that, at least for some predicate offenses, "proceeds" meant "net profits" and not "gross receipts." Petitioner thereafter filed the instant Motion to Vacate pursuant to 18 U.S.C. § 2255, claiming that *Santos* requires that his sentence be vacated.

Petitioner's motion is structured as asserting two claims: one for ineffective assistance of counsel, and one that he is "actually innocent" of the money laundering charge to which he pled guilty. However, in liberally construing the *pro se* motion, the Court notes that Petitioner has actually presented the following two claims: 1) He received ineffective assistance of counsel, and 2) his guilty plea was involuntary and unintelligent. Before addressing these two claims, however, it is necessary to briefly discuss two preliminary issues.

1. DE # 58 in 06–CR–20445.

## II. Preliminary Issues

### A. Retroactivity

As an initial matter, retroactivity is not an issue in this case. Judge White notes in his Report that, because *Santos* was decided after Petitioner's judgment became final, and it appears that *Santos* does not apply retroactively, Petitioner is procedurally barred from raising it. Assuming for the moment that *Santos* does not apply retroactively, Petitioner would still not be procedurally barred because the instant case is not a "*Santos* claim"; it is a claim for ineffective assistance of counsel (based on the Sixth Amendment guarantee of counsel) and an involuntary guilty plea (based on the Fifth Amendment privilege against self-incrimination and the general principle that waivers of constitutional rights must be knowing and voluntary). These principles were announced long before Petitioner's criminal judgment became final, and accordingly the issue of retroactivity need not be addressed.

Indeed, the Supreme Court conclusively decided this issue in *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). In *Bousley*, the petitioner pled guilty to "using" a firearm in violation of 18 U.S.C. § 924(c)(1). *Id.* at 616, 118 S.Ct. 1604. Five years later, the Court held in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), that § 924(c)(1)'s "use" prong required the Government to show "active employment of the firearm." *Id.* The petitioner then filed a § 2255 petition, arguing that his guilty plea was involuntary and unintelligent. *Id.* The Government made the argument that the petitioner could not seek relief because *Bailey* was not retroactive and the Court specifically rejected it, noting that it was unnecessary to conduct a retroactivity analysis because "[t]he only constitutional claim made [in *Bousley* ] is that petitioner's guilty plea was not know-

ing and intelligent. There is surely nothing new about this principle." *Id.* at 620, 118 S.Ct. 1604.

Moreover, even if this were a "*Santos* claim," it would still not be procedurally barred when analyzed under the retroactivity rule of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Under *Teague*, "[a] new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rul[e] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Whorton v. Bockting*, 549 U.S. 406, 416, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007) (quoting *Teague*, 489 U.S. at 311, 109 S.Ct. 1060; second brackets in original). This case does not fall within the second prong because *Santos* did not announce a watershed rule of criminal procedure, but it would fall within the first prong, because *Santos* announced a new substantive rule by modifying the elements of a criminal offense. *See Schriro v. Summerlin*, 542 U.S. 348, 354, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) ("New substantive rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms."). *Gonzalez v. Crosby*, 545 U.S. 524, 537 n. 9, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005) ("A change in the interpretation of a substantive statute may have consequences for cases that have already reached final judgment, particularly in the criminal context."); *United States v. Arevalo*, 368 Fed. Appx. 957, 2010 WL 935645, *1 (11th Cir. 2010) ("It is also clear that the claim Arevalo makes in his audita querela motion—that his conviction should be collaterally overturned because the Supreme Court's recent decision in *United States v. Santos*, 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008) applies retroactively—is cognizable under § 2255.").[2] Thus, under *Teag-*

---

**2.** It may also be possible for Petitioner to

argue in a *Santos* claim that retroactivity was

*ue,* a pure *"Santos* claim" should apply retroactively.[3]

### B. Actual Innocence

The term "actual innocence" has been used loosely by the parties in this case, and thus it would be helpful to clarify the scope of that term. Although the Supreme Court has assumed, without deciding, that a freestanding actual innocence claim may be available to a capital defendant, such a claim is not available in a noncapital case. *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) ("But this body of our habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."). Thus, "actual innocence" is not an affirmative claim for relief upon which a habeas petition may be granted. Rather, it is an *exception* that allows a petitioner to get around procedural hurdles such as 1) the one-year statute of limitation, 2) the prohibition against second or successive petitions, and 3) the rule of procedural default. The first and second hurdles are inapplicable here because Petitioner filed the instant Motion within one year of his criminal judgment becoming final,[4] and this is

his first petition. However, it is relevant to the third hurdle, procedural default.

 Procedural default is "the general rule that claims not raised on direct appeal may not be raised on collateral review." *Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). There are exceptions to this rule (including actual innocence), which will be discussed below. Here, Petitioner did not raise any claim on direct appeal because no appeal was filed. Therefore, procedural default must be addressed with respect to each claim raised in this Motion. Having so recognized, the Court will now turn to Petitioner's claims.

### III. Ineffective Assistance of Counsel

#### A. Procedural Default

The Supreme Court has held that a claim for ineffective assistance of counsel is not subject to the rule of procedural default. *Massaro,* 538 U.S. at 509, 123 S.Ct. 1690 ("We do hold that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."). Therefore, the fact that Petitioner did not raise this claim on direct appeal does not bar

---

inapplicable because *Santos* did not announce a "new" rule, but merely clarified what the law always meant. In this vein, he could argue that he was convicted without the Government having proven every element of the offense beyond a reasonable doubt, which would violate the Due Process Clause. *See Fiore v. White,* 531 U.S. 225, 229, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001) ("Rather, the question is simply whether Pennsylvania can, consistently with the Federal Due Process Clause, convict Fiore for conduct that its criminal statute, as properly interpreted, does not prohibit. This Court's precedents make clear that Fiore's conviction and continued incarceration on this charge violate due process. We have held that the Due Process

Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt.").

**3.** Of course, this would only be the case for Petitioner if *Santos* applied to Petitioner's case, which, as the Court explains below, it does not.

**4.** As Judge White correctly noted, the conviction became final on February 1, 2008, and Petitioner filed this Motion on January 27, 2009, less than one year later. Therefore, no discussion of whether *Santos* reset the limitations clock by announcing a new right is necessary.

consideration of the claim in the instant Motion.

### B. The Merits

■ Petitioner claims that he received ineffective assistance of counsel because his lawyer failed to notify him that the Supreme Court had granted certiorari in the *Santos* case, and that, had he known of this development, he would not have pled guilty and would have insisted on going to trial. Similarly, Petitioner claims that his counsel should have filed a challenge to the statute, arguing for a different interpretation of the word "proceeds," which was the subject of the eventual *Santos* decision.[5]

However, these purported errors do not amount to ineffective assistance of counsel. Under the two-part test of *Strickland v. Washington*, Petitioner must show 1) that his counsel exhibited constitutionally deficient performance, and 2) that he was prejudiced as a result. 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong is easily disposed of because, in the Eleventh Circuit, it is not ineffective assistance of counsel to fail to anticipate a change in the law. *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir.1994) ("We have held many times that 'reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'") (quoting *Elledge v. Dugger*, 823 F.2d 1439, 1443 (11th Cir. 1987)); *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir.2001) (Carnes, J., concurring in the denial of a petition for rehearing en banc) ("In this circuit, we have a wall of binding precedent which shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel."). Thus, counsel's failure to anticipate the

Supreme Court's decision in *Santos* could not have been ineffective assistance.

The fact that, at the time of Petitioner's guilty plea, the Supreme Court had already granted certiorari in *Santos* does not alter this result. At the time of Petitioner's guilty plea, only the Seventh Circuit had limited the definition of proceeds to "net profits," and the two published cases both involved gambling proceeds. *See Santos v. United States*, 461 F.3d 886 (7th Cir.2006); *United States v. Scialabba*, 282 F.3d 475 (7th Cir.2002). Moreover, as the Seventh Circuit acknowledged in its *Santos* decision, several other circuits had rejected this view. *See Santos*, 461 F.3d at 891 ("To start, all the other circuits that have confronted the statutory debate over whether "proceeds" in § 1956(a)(1) means gross or net income have rejected *Scialabba's* approach."). *See also United States v. Grasso*, 381 F.3d 160, 167 (3d Cir.2004); *United States v. Iacaboni*, 363 F.3d 1, 4 (1st Cir.2004); *United States v. Huber*, 404 F.3d 1047, 1058 (8th Cir.2005). In fact, the Eleventh Circuit, while not directly addressing the issue, had noted that "[t]he term 'proceeds' simply represents what is produced by or derived from something (as a sale, investment, levy, business) by way of *total revenue;* the total amount brought in." *United States v. Silvestri*, 409 F.3d 1311, 1333 (11th Cir.2005) (emphasis added; quotations and citations omitted). Accordingly, the Supreme Court's grant of certiorari did nothing to change the fact that the law was fairly well established that proceeds meant "gross receipts." Hence, Petitioner's counsel's failure to raise any *Santos*-type issues did not amount to constitutionally deficient performance.

■ Moreover, Petitioner cannot satisfy the second *Strickland* prong—prejudice.

---

5. Petitioner also claims that his counsel should have raised a constitutional challenge to the money laundering statute. This claim

is meritless because *Santos* said nothing about the constitutionality of the statute.

In the context of a guilty plea, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Petitioner cannot demonstrate this because the *Santos* decision, as subsequently interpreted by the Eleventh Circuit and other courts, does not apply to Petitioner's case.[6] In *Santos*, the Supreme Court addressed the meaning of the federal money laundering statute, specifically, 18 U.S.C. § 1956(a)(1)(A)(i). This statute makes it a crime for someone to, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conduct[ ] or attempt[ ] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—with the intent to promote the carrying on of specified unlawful activity." The unlawful activity in *Santos* was an illegal gambling operation. *Santos*, 128 S.Ct. at 2023. The specific issue that the *Santos* Court confronted was the meaning of the term "proceeds" in the statute. Noting that the term was susceptible to either definition, a four-justice plurality applied the Rule of Lenity and held that the word proceeds meant net profits, and not gross receipts. *Id.* at 2025. Moreover, three of the Justices in the plurality made clear that they thought the word proceeds must mean the same thing throughout the entire statute, no matter what the predicate offense was. *Id.* at 2029–31.

■ However, *Santos* was a fractured decision. Justice Stevens, concurring in the judgment, reasoned that the word could mean different things in different contexts, and concluded that, at least when the predicate offense is gambling, proceeds meant net profits. *Id.* at 2033–34. Meanwhile, the principal dissent, joined by four Justices, disagreed with the idea that the word proceeds could take on different meanings depending on the context. *Id.* at 2035–36. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest ground.'" *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). Here, that narrow holding is difficult to discern. Although Justice Stevens's concurring opinion, holding that proceeds means net profits if the predicate offense is gambling, would appear to be narrowest, there is no agreement on whether that interpretation carries over for other predicate offenses. Indeed, an examination of the plurality and dissenting opinions shows that seven Justices appear to agree that the word cannot mean different things in different contexts. Thus, the only precedential value that can be taken from *Santos* is its specific result—that, when the predicate offense is gambling, proceeds means net profits. Given the fractured nature of the decision, that holding cannot be extended to other predicate offenses without clearer guidance from the Supreme Court. In fact, nearly every court, including the Eleventh Circuit, to have confronted the issue has reached the same conclusion. *See United States v. Demarest*, 570 F.3d 1232, 1242 (11th Cir.2009) ("The narrow holding in Santos, at most, was that the gross receipts of an unlicensed gambling operation were not 'proceeds' under section 1956, but there is no evidence that the funds Demarest laundered were gross receipts of an

6. This is also a reason that Petitioner cannot satisfy the performance prong.

illegal gambling operation. The evidence instead established that the laundered funds were the proceeds of an enterprise engaged in illegal drug trafficking."); *United States v. Howard*, 309 Fed.Appx. 760, 771 (4th Cir.2009) ("Because *Santos* does not establish a binding precedent that the tern 'proceeds' means 'profits,' except regarding an illegal gambling charge, we are bound by this Court's precedent establishing that 'proceeds' means 'receipts.' "); *United States v. Fleming*, 287 Fed.Appx. 150, 155 (3d Cir.2008) ("Therefore, even if the government did not show that the money involved in Fleming's money laundering conviction was profits from the drug sales, his conviction on this count must stand because, as we have stated, the term 'proceeds' includes gross revenues for drug sales."); *United States v. Brown*, 553 F.3d 768, 783 (5th Cir.2008) ("The precedential value of *Santos* is unclear outside of the narrow factual setting of that case; and the decision raises as many issues as it resolves for the lower courts.").

In the instant case, Petitioner pled guilty to laundering the proceeds of a drug trafficking operation. Because the predicate offense was not gambling, *Santos* says nothing about the meaning of the word "proceeds" in Petitioner's case. As such, Petitioner cannot establish a reasonable probability that he would have withdrawn his guilty plea and insisted on a trial, because *Santos* did not change the law—it was exactly the same before and after Petitioner's guilty plea. Accordingly, Petitioner cannot satisfy *Strickland*'s prejudice prong, and therefore his claim for ineffective assistance of counsel must be rejected.

## IV. Involuntary and Unintelligent Guilty Plea

### A. Procedural Default

Ordinarily, because Petitioner did not raise the issue of the voluntariness of his guilty plea on direct appeal, he would not be permitted to raise the issue on collateral review. *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) ("And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."). However, there are two exceptions to this rule: "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either [1] 'cause' and actual 'prejudice,' or [2] that he is 'actually innocent.' " *Id.* at 622, 118 S.Ct. 1604 (citations omitted). The Court will address each exception in turn.

### 1. Cause and Prejudice

■ To demonstrate "cause," Petitioner must show that "some objective factor external to the defense" impeded his ability to raise the issue on direct review. *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Although the Supreme Court has held that ineffective assistance of counsel can qualify as sufficient cause, see *Murray v. Carrier*, 477 U.S. 478, 488–89, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), as discussed above, Petitioner's counsel was not ineffective. Equally unavailing are arguments asserting that the legal basis for the claim was unavailable at the time of his plea, or that such a claim would have been futile. *Bousley* makes clear that these arguments are not sufficient to demonstrate cause. *Bousley*, 523 U.S. at 622–23, 118 S.Ct. 1604.

■ Petitioner's only argument that may have merit is the fact that, as part of his plea agreement and in exchange for the Government's dismissal of several counts of the indictment, Petitioner waived his right to appeal. Accordingly, Petitioner did not file a direct appeal. In contrast,

the defendant in *Bousley* did file a direct appeal, but did not assert the claim that he was attempting to bring on collateral review. If Petitioner's waiver of his right to appeal was premised on misinformation about the elements of the crime with which he was charged, that waiver may have been involuntary and unintelligent, which could provide sufficient "cause" to satisfy the first prong of the "cause and prejudice" requirement.

However, even assuming Petitioner has demonstrated sufficient cause, he cannot establish prejudice because, as discussed above, the *Santos* decision does not apply to his case. That is, even if he were permitted to raise the claim, the result would be the same because *Santos* did not change the definition of proceeds when the predicate offense is not gambling. Accordingly, Petitioner has not met the "cause and prejudice" standard.

### 2. Actual Innocence

■ To establish actually innocence, Petitioner must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent.' To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting *Murray*, 477 U.S. at 496, 106 S.Ct. 2639). Of course, this standard was designed to be applied after a trial and conviction. Here, there was no trial because Petitioner pled guilty. Accordingly, the Court has no evidence to evaluate except for the Government's factual proffer during the plea colloquy, which says nothing on whether Petitioner laundered net profits or merely gross receipts. The Su-

preme Court confronted this very situation in *Bousley*, instructing that, if a petitioner makes a colorable showing that a post-plea interpretation of the law by the Supreme Court renders his plea involuntary, the district court should hold a hearing at which the petitioner could attempt to show that he is actually innocent of the charges. *Bousley*, 523 U.S. at 623, 118 S.Ct. 1604.[7] In the instant case, however, Petitioner is not entitled to a hearing on this issue because he cannot make the threshold showing that his plea was involuntary. That is, because *Santos* did not change the law as it applied to Petitioner, the record conclusively demonstrates that he had a full and complete understanding of the offense to which he pled guilty. Thus, Petitioner cannot make the requisite showing to satisfy the actual innocence exception, and therefore, because of his procedural default, he is not entitled to a consideration of the merits of his claim.

### B. The Merits

Of course, as noted above, a consideration of the merits of this claim is somewhat intertwined with the actual innocence issue. Therefore, to be thorough, the Court finds that, assuming Petitioner is entitled to have his involuntary plea claim heard on the merits, it still fails.

■ A plea of guilty, like all waivers of constitutional rights, must be "voluntary" and "intelligent." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A plea does not qualify as intelligent unless the criminal defendant receives "real notice of the true nature of the charge against him." *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941). The Supreme Court

---

**7.** Further, *Bousley* noted that the parties would not be limited to the evidence currently in the record, and also that Petitioner would be required to show that he is actually inno-

cent of all the charges the Government declined to bring in exchange for Petitioner's guilty plea. *Bousley*, 523 U.S. at 624, 118 S.Ct. 1604.

has noted that, when a post-guilty-plea change in the interpretation of a criminal statute renders incorrect the information provided to the defendant about nature of the charge, such a plea is constitutionally invalid. *Bousley*, 523 U.S. at 618–19, 118 S.Ct. 1604 ("In other words, petitioner contends that the record reveals that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged. Were this contention proven, petitioner's plea would be, contrary to the view expressed by the Court of Appeals, constitutionally invalid.").

 However, as discussed above, that is not the case here because *Santos* did not change the law. As it applies to Petitioner, the definition of "proceeds" is still the same as it was before Petitioner pled guilty. Therefore, Petitioner had a full and complete understanding of the nature of the charges against him, and his guilty plea was voluntary and intelligent. Because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," Petitioner is not entitled to a hearing, and his motion to vacate must be denied. 28 U.S.C. § 2255(b).

V. Conclusion

Accordingly, after careful consideration and the Court being otherwise fully advised, it is ORDERED, ADJUDGED, and DECREED that:

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (DE # 1 in 09–CV–20293 & DE # 58 in 06–CR–20445) is hereby DENIED.

2. Judge White's Report and Recommendation (DE # 16 in 09–CV–20293) is hereby AFFIRMED with respect its result, but for the reasoning stated in this Order.

3. The Clerk shall CLOSE this case.

*REPORT OF MAGISTRATE JUDGE*

JEFFREY S. WHITE, United States Magistrate Judge.

*Introduction*

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. § 2255, attacking his conviction and sentence for conspiracy to commit money laundering, entered following a guilty plea in case no. 06–20445–Cr–King.

The Court has reviewed the letter motion with supporting memorandum and affidavit (Cv–DE# 1), as well as, supplements thereto (Cv–DE # s6,11), the government's response with multiple exhibits (Cv–DE# 10), the movant's reply (Cv–DE# 15), the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

Construing the movant's claims liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the movant appears to raise the following claims:

A.[1] He was denied effective assistance of counsel, where his lawyer failed to: (1) advise the movant of the evidence required by the government to sustain a conviction for money laundering; (2) discuss viable defenses; (3) challenge the ambiguity of the money laundering statute; (4) advise the movant that the issue of the money laundering statute was currently pending before the Supreme Court; and, (5) advise the movant against waiving his right to a direct appeal based on the pendency of the case before the Supreme Court. (Cv–DE# 1:6–7).

1. For purposes of clarity, the claims are numbered as they appear in the movant's motion.

B. He was denied effective assistance of counsel, where his lawyer failed to: (1) challenge the ambiguity of the money laundering statute and its definition of "proceeds" and "concealing proceeds," and (2) apprise the movant not to waive his direct appeal right in light of the issues pending before the Supreme Court. (Cv–DE# 1:6–7).

## Procedural History

The procedural history of the underlying criminal case reveals that the movant was charged with conspiracy to commit money laundering of drug proceeds; in violation of 18 U.S.C. § 1956(h), as well as, multiple money laundering charges detailing the movant's thirty-three financial transactions designed to transport drug proceeds and to conceal the nature, source, ownership, and control of those monies (Counts 2 through 35). (Cr–DE# s3,26,47,54). On March 29, 2007, the movant entered into a negotiated written plea agreement, agreeing to plead guilty to Counts 1, 35, and 37 of the Indictment. (Cr–DE# 26). Prior to sentencing, the government filed a motion for downward departure which was heard by the court on June 12, 2007. (Cr–DE# s35–36). At that time, the court denied the government's motion, rejected the terms of the plea agreement, and afforded the movant an opportunity to withdraw the plea. (Cr–DE# 36). The court advised the movant to file a status report within thirty days as to whether he would be proceeding to trial or entering into another plea. (Id.). On July 12, 2007, the movant withdrew his guilty plea, pending the parties' continued negotiations of a revised/renewed plea agreement. (Cr–DE# s39–40).

On November 15, 2007, pursuant to the terms of a new, negotiated written plea agreement, the movant agreed to plead guilty to Counts 1, 35, and 37 of the Indictment. (Cr–DE# s47,57). Specifically, the movant again acknowledged that the sen- tence would be imposed by the court after considering the advisory guideline sentence. (Cr–DE# 47:2). The movant further acknowledged that the court may depart from the applicable advisory guideline range and impose a sentence that is either more or less severe than the guideline sentence. (Id.). The movant agreed that the court was required to consider the advisory guideline sentence, but was not bound to impose such a sentence. (Id.). Rather, the court was permitted to tailor the ultimate sentence in light of other statutory concerns, and that the court could ultimately impose a more severe or less severe sentence than the advisory guideline sentence. (Id.).

Regarding his sentence exposure, the movant acknowledged that as to Counts 1 and 35, he faced a statutory maximum of up to 20 years in prison, and as to Count 37, he faced a maximum of 5 years in prison. (Id.:3). The parties jointly agreed, although not binding on the probation office or the court, to recommend that the total adjusted offense level, before acceptance of responsibility, was a level 36. (Id.:4). The movant also acknowledged his right to appeal the sentence imposed pursuant to 18 U.S.C. § 3742, however, he agreed to waive the right to appeal any sentence imposed, or the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range the court establishes at sentencing. (Id.:8).

In exchange, the government agreed to dismiss the remaining counts at sentencing. (Id.:1–2). The government also agreed to recommend that the movant's base offense level be reduced up to three levels based on the movant's timely acceptance of responsibility, and that the movant be sentenced to the low end of the

guideline range determined by the court. (*Id.*:4).

Prior to sentencing, a PSI was prepared which reveals as follows. The PSI calculated the movant's initial base offense level at 8, pursuant to U.S.S.G. § 2S1,1, but it was increased 18 levels pursuant to U.S.S.G. § 2B1.1 based on the value of the laundered funds. (PSI ¶ 27). An additional 12 levels were added because the movant knew the funds were the proceeds of or intended to promote the manufacture, importation, or distribution of a controlled substance; he was in the business of laundering funds, and the laundering involved sophisticated means, resulting in an adjusted offense level 38. (PSI ¶¶ 28–30). Three levels were then removed based on the movant's timely acceptance of responsibility, resulting in a total adjusted offense level 35. (PSI ¶¶ 36–38).

The probation officer next determined that the movant had a total of zero criminal history points, resulting in a criminal history category I. (PSI ¶ 41). A total adjusted base offense level 35 and a criminal history category I, resulted in a guideline range of 168 to 210 months in prison. (PSI ¶ 81). Statutorily, the movant faced as to Counts 1 and 35, a minimum of zero and up to 20 years in prison pursuant to 18 U.S.C. § 1956(a), and as to Count 37, he faced zero to five years in prison pursuant to 18 U.S.C. § 1960(a). PSI ¶ 80. Prior to sentencing, movant's counsel filed a letter with the probation department, objecting to numerous enhancements contained in the PSI. (Cv–DE# 10:Ex. E).

On January 16, 2008, the movant appeared for sentencing. (CvDE# 10:Ex. J–Sentencing Transcript). At that time, the parties agreed and the court accepted that,

contrary to the probation officer's initial recommendation, the total offense level should be a level 33, with a criminal history category I, resulting in an advisory guideline range of 135 to 168 months in prison. (*Id.*:2–3). Moreover, the parties also stipulated and agreed that the total forfeiture amount would be $250,000.00. (*Id.*:5–6).

The court then heard the government's recommendation regarding its motion for downward departure based on substantial assistance. (*Id.*:6). The government recommended that the court reduce the total sentence by 27 months, bringing it down to 108 months. (*Id.*). After hearing argument from movant's counsel for consideration of a lower sentence given the movant's age, lack of prior criminal involvement, and health condition, the court indicated it was not inclined to go lower than the government's recommendation, especially as the amount of laundered funds was in excess of $5 million dollars. (*Id.*:9). Thereafter, the court granted the government's motion and sentenced the movant to a total term of 108 months in prison, followed by two years supervised release. (*Id.*:10–11; Cr–DE# 54). The judgment was entered by the Clerk on January 17, 2008. (Cr–DE # 54). No direct appeal was filed.

For purposes of the AEDPA's federal one-year limitations period, the judgment became final at the latest on February 1, 2008, ten days after the entry of judgment, when time expired for filing a notice of appeal.[2] At the latest, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than February 1,

---

2. Where, as here, a defendant does not pursue a direct appeal, his conviction becomes final when the time for filing a direct appeal expires. *Adams v. United States,* 173 F.3d 1339, 1342 n. 2 (11th Cir.1999). The time for filing

a direct appeal expires ten days after the judgment or order being appealed is entered. *Fed.R.App.P.* 4(b)(1)(A)(i). The judgment is "entered" when it is entered on the docket by the Clerk of Court. *Fed.R.App.P.* 4(b) (6).

2009. *See Griffith v. Kentucky,* 479 U.S. 314, 321, n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1986). This motion to vacate was timely filed by the movant on January 27, 2008.[3] (CvDE# 1).

## Discussion of Claims

As will be demonstrated in more detail *infra,* the movant is not entitled to vacatur on any of the claims presented.[4] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the movant a fundamentally trial and due process of law. The movant therefore is not entitled to habeas corpus relief. *See Fuller v. Roe,* 182 F.3d 699, 704 (9 Cir.1999) (holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), *overruled on other grounds, Slack v. McDaniel,* 529 U.S. 473, 482, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). *See also United States v. Rivera,* 900 F.2d 1462, 1470 (10 Cir.1990) (stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the movant's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. *See Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

Here, the movant challenges counsel's effectiveness for numerous reasons. In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance—that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice—but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Chandler v. United States,* 218 F.3d 1305 (11th Cir.2000) (*en banc*). The standard is the same for claims of ineffective assistance on appeal. *Matire v. Wainwright,* 811 F.2d 1430, 1435 (11 Cir.1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. *Id.* at 697; *Waters v. Thomas,* 46 F.3d 1506, 1510 (11 Cir.1995).

In the case of ineffective assistance during the punishment phase, prejudice is established if "there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh." *Spriggs v. Collins,* 993 F.2d 85, 88 (5th Cir.1993); *United States v. Bartholomew,* 974 F.2d 39, 42 (5th Cir.1992). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694. The court need not address both prongs of the Strickland standard if the complainant has made an insufficient showing on one. *Id.* at 697. However, a movant must establish that the sentence was increased due to

---

**3.** *See: Adams v. U.S.,* 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

**4.** Briefly, the evidence against the movant was more than sufficient to support his convictions. The movant has not shown that the result of the trial or appeal would have been affected had counsel proceeded differently. In other words, no deficient performance or prejudice pursuant to *Strickland* has been established arising from any of the claims raised in this collateral proceedings, nor has a denial of due process been demonstrated. To the contrary, it is clear after independent review of the record that the movant received a fair trial, and that no constitutional violations occurred. Consequently, he has failed to demonstrate that he is entitled to habeas corpus relief in this collateral proceeding.

counsel's deficient performance. *Glover v. United States,* 531 U.S. 198, 203–204, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001).

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the two-prong *Strickland* standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Moreover, review of counsel's conduct is to be highly deferential. *Spaziano v. Singletary,* 36 F.3d 1028, 1039 (11 Cir.1994), and second-guessing of an attorney's performance is not permitted. *White v. Singletary,* 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); *Atkins v. Singletary,* 965 F.2d 952, 958 (11 Cir.1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant,* 13 F.3d 384, 386 (11 Cir.1994).

Finally, although the sentencing process may be reviewed by the district court on a § 2255 motion, the severity of a sentence within statutory limits may not be reviewed because it raises no constitutional or statutory question. *Kett v. United States,* 722 F.2d 687, 690 (11th Cir.1984); *see also, Nelson v. United States,* 709 F.2d 39, 40 (11th Cir.1983) (*citing, United States v. Diaz,* 662 F.2d 713, 719 (11th Cir.1981); *United States v. Becker,* 569 F.2d 951, 965 (5th Cir.), *cert. denied,* 439 U.S. 865, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978), *United States v. White,* 524 F.2d 1249, 1254 (5th Cir.1975), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976).); *See also Williams v. Alabama,* 403 F.2d 1019, 1020 (5th Cir.1968) (§ 2254

habeas case) (sentence within statutory limit is generally not subject to constitutional attack); *Castle v. United States,* 399 F.2d 642, 652 (5th Cir.1968) (§ 2255 case) (sentence within statutory limit is not reviewable on appeal and does not amount to a constitutional violation). These former Fifth Circuit decisions are controlling authority in this circuit. *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc* ).

In **claim A,** the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to: (1) advise the movant of the evidence required by the government to sustain a conviction for money laundering; (2) discuss viable defenses; (3) challenge the ambiguity of the money laundering statute; (4) advise the movant that the issue of the money laundering statute was currently pending before the Supreme Court; and, (5) advise the movant against waiving his right to a direct appeal based on the pendency of the case before the Supreme Court. (CvDE# 1:6–7). In **claim B,** the movant again asserts that he was denied effective assistance of counsel, where his lawyer failed to: (1) challenge the ambiguity of the money laundering statute and its definition of "proceeds" and "concealing proceeds," and (2) apprise the movant not to waive his direct appeal right in light of the issues pending before the Supreme Court. (*Id.*).

The litany of the movant's complaints as to counsel's representation prior to the change of plea proceeding were waived by the movant's knowing and voluntary guilty plea. The law is clear that a movant waives his right to contest all nonjurisdictional defects and defenses, when he enters a knowing and voluntary guilty plea to the violation. Where a criminal defendant enters a knowing, voluntary, and intelligent plea of guilty to an offense

or offenses, he waives, or more accurately, forfeits all non-jurisdictional defects and defenses. *See Smith v. United States,* 447 F.2d 487, 488 (5th Cir.1971), *citing, Hayes v. Smith,* 447 F.2d 488 (5th Cir.1971); *see also, Wilson v. United States,* 962 F.2d 996 (11th Cir.1992); *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989); *United States v. Glinsey,* 209 F.3d 386, 392 (5th Cir.2000), *citing, United States v. Smallwood,* 920 F.2d 1231, 1240 (5th Cir.1991). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *Id.* To enter into a voluntary plea, the defendant must understand the law in relation to the facts. *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

In this case, review of the record confirms that the movant's plea was knowing and voluntary. To ensure that a plea is voluntary and knowing, *Fed.R.Cr.P.* 11(b)(1) states that "the court must address the defendant personally in open court before accepting the plea and inform the defendant of, and determine that the defendant understands ... the nature of each charge to which the defendant is pleading." *Gordon v. United States,* 496 F.3d 1270, 1277 (11th Cir.2007). The rule imposes upon a district court the obligation and responsibility to conduct a searching inquiry into the voluntariness of a defendant's guilty plea. *Id.* (citations omitted).

Thus, "[ a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *United States v. Moriarty,* 429 F.3d 1012, 1019 (2005). In *Moriarty,* the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that he gives under oath.

*Id.*

Review of the change of plea proceedings reveals that the court conducted a thorough Rule 11 proceeding. (Cr–DE# 57–Transcript Change of Plea). At that time, the movant acknowledged under oath[5] that he was satisfied with counsel's representation, and that he had discussed the indictment and the nature of the charges and possible defenses with counsel prior to the change of plea. (*Id.*:5–6,9). The court advised and the movant acknowledged understanding the nature of the charges, and the potential consequences of entering a guilty plea. (*Id.*). The movant also denied being forced, threatened or coerced into changing his plea. (*Id.*:6). The movant further denied that any promises, other than those con-

---

5. The law is clear that "solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison,* 431 U.S. 63, 73–74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir.1988). The subsequent presentation of conclusory dismissal, as allegations, unsupported by specifics, are contentions which in the face of is subject the record to summary are wholly incredible. *Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

tained in the written plea agreement, had been made to induce him to plead guilty. (*Id.*:6–7). Finally, the movant confirmed knowing that by entering into the plea he was waiving his constitutional rights to a jury trial and to confront and present witnesses. (*Id.*:8–9).

Factually, the government proffered that from August 1997 to March 2004, he conspired with others in the United States and abroad to receive a total of $5 million dollars in drug trafficking proceeds. He took these monies and deposited it into bank accounts he controlled, and then disbursed the funds from his account to others. By doing so, he concealed the nature of the drug proceeds in order to make the transaction appear legitimate. The movant further used wire transfer to transmit the funds to others in the United States and abroad, despite knowing he needed to be a licensed remitter to perform wire transfers.

On the record before this court, it is evident that the movant understood the facts and the elements of the offense upon which the charge rested. Moreover, by way of entering into the negotiated plea agreement, the movant was telling his lawyer not to conduct any further investigation and not present at a trial proceeding any legal defenses that he may be entitled to as it relates to his case. Under these circumstances, no showing has been made that the plea was anything but knowing and voluntary.

Thus, by entering in to a knowing and voluntary plea, the movant waived all non-jurisdictional defects and defenses. He is therefore barred from pursing these claims. Under these circumstances, no showing has been made that counsel was deficient or that the movant suffered prejudice therefrom. *See Strickland, supra.* Consequently, the movant's generalized allegations in this collateral proceeding are clearly refuted by the record. The plea

was valid and entered knowingly and voluntarily after a through Rule 11 proceeding. Thus, for the reasons previously expressed in this Report, the movant is not entitled to relief on these claims.

Regarding his assertions that counsel failed to advise him and/or otherwise challenge the ambiguity of the money laundering statute, and the fact that challenges to that statute were currently pending before the Supreme Court, such arguments also fail on the merits. (Cv–DE# 1:6–7). Specifically, the movant claims that in light of *United States v. Santos,* 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008), he is actually innocent of the charge to which he pleaded guilty. (CvDE# 15:3). In support thereof, the movant contends that although he pleaded guilty to an 18 U.S.C. § 1956(h) violation, he was sentenced under the substantive offense of money laundering, in violation of 18 U.S.C. § 195 6(a)(2)(B)(I). As such, according to the movant, *Santos* is applicable because 18 U.S.C. § 1956(a)(2)(B)(I) refers to the term "proceeds." (*Id.*).

In *Santos,* the Supreme Court construed an ambiguity in the federal money-laundering statutes in favor of the defendants and overturned their convictions. *United States v. Santos,* 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008). At issue was whether the term "proceeds" as employed throughout the statute meant "receipts" or "profits." *See id.* at 2024. Because the defendants had been convicted for transactions involving the receipts of illegal activity that were not the profits of that activity, the definition of the term was central to the validity of their convictions. Writing for the majority, Justice Scalia noted that profits and receipts were both accepted synonyms for proceeds, and that the rule of lenity required the resolution of this ambiguity in favor of the defendants. *See id.* at 2025.

It should be noted that the Supreme Court has not made the *Santos* decision retroactively applicable to cases on collateral review, and this Court is unable to find a single case in which the *Santos* decision has been found to apply retroactively. To the contrary, courts that have considered the issue have found that it is not retroactively applicable to cases on collateral review or have otherwise not decided the issue. *See e.g., Vaughan v. United States*, 2008 WL 2945449 (W.D.N.C.2008) (holding that the Santos decision cannot be applied retroactively in collateral proceedings or otherwise); *Johal v. United States*, 2009 WL 210709 (W.D.Wash.2009) (assumed without deciding that Santos is retroactively applicable to cases on collateral review); *United States v. Iacaboni*, 592 F.Supp.2d 216 (D.Mass.2009) (recognizing that the Supreme Court has not held that Santos applies retroactively on collateral review.). Therefore, because it appears that *Santos* is not retroactive, the movant is procedurally barred from raising a *Santos* claim in this collateral proceeding.

However, even if *Santos*, is found to be retroactively applicable, he is nonetheless barred from raising the claim because at the time of his conviction and sentence, *Santos* had not been decided. As will be recalled, the movant's conviction became final in February 2008. *Santos* was decided on June 2, 2008, almost four months later. Moreover, to the extent he faults counsel for failing to pursue the issue, it is well established law in the Eleventh Circuit that it is not ineffective assistance for an attorney to fail to foresee a change in the law. *See, United States v. Ardley*, 273 F.3d 991 (11th Cir.2001) (denial of suggestion for rehearing en banc) (our circuit law completely forecloses the contention that an attorney's failure to anticipate the *Apprendi* decision is ineffective assistance); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir.1994) ("We have held many times

that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.' "). Counsel was not ineffective for failing to foresee the development in the law. Under these circumstances, the movant cannot establish prejudice pursuant to *Strickland* arising from counsel's failure to raise a *Santos* claim.

To the extent the movant argues that he is actually innocent, this claim is also meritless. A habeas petitioner attempting to establish "actual innocence" must meet a high standard. *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). He must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.' " *Bousley, supra* at 623, *quoting, Schlup v. Delo*, 513 U.S. 298, 327–328, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Court emphasized that actual innocence means factual innocence, not mere legal insufficiency. *Id. See also High v. Head*, 209 F.3d 1257 (11th Cir. 2000); *Lee v. Kemna*, 213 F.3d 1037, 1039 (8th Cir.2000); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107 (2d Cir.2000) (citing *Schlup v. Delo*, 513 U.S. 298, 299, 115 S.Ct. 851, 130 L.Ed.2d 808, (1995)); *Jones v. United States*, 153 F.3d 1305 (11th Cir.1998) (holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him). To be credible, a claim of actual innocence requires the petitioner to "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. *Id.* at 316. No such

showing has been made here, and in fact, the movant's protestations of innocence are refuted by the record. Under these circumstances, counsel was not ineffective for failing to pursue this nonmeritorious claim.

Moreover, the movant's argument that he did not understand the meaning of the term "proceeds" as it relates to money laundering drug proceeds thus rendering his plea involuntary, also fails. The Eleventh Circuit has rejected this precise argument, finding that the *Santos* holding has "limited precedential value," and therefore it would not extend that holding to a money laundering case in which the proceeds came from drug trafficking. *United States v. Demarest,* 570 F.3d 1232 (11th Cir.2009). Specifically, the Eleventh Circuit held that "[W]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .' " The narrow holding in *Santos,* at most, "was that the gross receipts of an unlicensed gambling operation were not "proceeds" under section 1956, but there is no evidence that the funds Demarest laundered were gross receipts of an illegal gambling operation. The evidence instead established that the laundered funds were the proceeds of an enterprise engaged in illegal drug trafficking." *Id. (quoting Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). Thus, it appears that *Santos* does not apply to cases such as the movant's, where the proceeds involved were from drug trafficking.

Finally, the movant's request for an evidentiary hearing on his claims of ineffective assistance of counsel should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirma-

tively contradicted by the record. *See Holmes v. United States,* 876 F.2d 1545, 1553 (11th Cir.1989), *citing, Guerra v. United States,* 588 F.2d 519, 520–21 (5th Cir.1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

### Conclusion

It is therefore recommended that this motion to vacate sentence be denied in its entirety.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

### ORDER DENYING MOTION FOR CERTIFICATE OF APPEALABILITY

THIS CAUSE comes before the Court upon Petitioner's Motion for Certificate of Appealability (DE # 20). Petitioner argues that the certificate should be issued on two issues: 1) Whether Petitioner received ineffective assistance of counsel, and 2) whether Petitioner procedurally defaulted his claim that his guilty plea was involuntary and unintelligent.

 "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller–El v. Cockrell,* 537 U.S. 322, 338, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Petitioner has failed to make this showing.

As to the first issue, Petitioner contends that it is debatable whether the holding in *United States v. Santos,* 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008), applies

to Petitioner's case. It is not debatable. The Eleventh Circuit in *United States v. Demarest*, 570 F.3d 1232, 1242 (11th Cir. 2009), has squarely addressed this issue and held that *Santos* does not apply to the proceeds of illegal drug trafficking. *See id.* ("The narrow holding in *Santos*, at most, was that the gross receipts of an unlicensed gambling operation were not 'proceeds' under section 1956, but there is no evidence that the funds Demarest laundered were gross receipts of an illegal gambling operation. The evidence instead established that the laundered funds were the proceeds of an enterprise engaged in illegal drug trafficking.").[1] This view comports with the holding of every circuit to have addressed the issue. Petitioner suggests that this Court should ignore *Demarest* because it is inconsistent with Supreme Court precedent. However, *Demarest* is entirely consistent with *Santos'* s narrow holding. The other statements cited by Petitioner concerning the implications of the holding (and the reference to *Clark v. Martinez* ) were merely dicta and were not joined by a majority of the Justices. Moreover, even if *Demarest* were somehow inconsistent with Supreme Court precedent, this Court would still be bound to follow it.[2] Therefore, Petitioner's claim is clearly foreclosed by controlling law, and is not debatable among reasonable jurists.

As to the second issue, Petitioner contends that it is debatable whether he procedurally defaulted his claim that his guilty plea was involuntary and unintelligent. It is not debatable. First, Petitioner claims that he did not waive his right to appeal. This is immaterial. His waiver of appeal based upon possible misinformation about the elements of the charge was the very thing that satisfied the "cause" requirement of the "cause and prejudice" standard. Thus, without the waiver, Petitioner cannot even establish the first prong of an exception to procedural default. Moreover, even if he did not waive his right to appeal, and his lawyer was ineffective by failing to file a timely Notice of Appeal, Petitioner cannot satisfy the prejudice requirement because, as noted above, *Santos* did not change the law with respect to Petitioner's case. Finally, even assuming that Petitioner has met an exception to procedural default Petitioner still cannot prevail on the merits because his plea was voluntary and intelligent. *Santos* did not change the definition of the criminal offense to which Petitioner plead guilty, and therefore Petitioner understood the contours of his guilty plea. Thus, this claim s also foreclosed by clearly controlling law, and is not debatable among reasonable jurists.

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** that Petitioner's Motion for Certificate of Appealability (DE # 20) be, and the same is hereby **DENIED.**

**DONE AND ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Court-

---

1. This view was recently reaffirmed. *See King v. Keller*, 2010 U.S.App. LEXIS 7376, \*8, 2010 WL 1337701, \*3 (11th Cir. Apr. 7, 2010) ("Thus, because King's offense conduct was totally unrelated to illegal gambling, *Santos* is inapplicable to his case.").

2. Petitioner's reference to *Moreland v. United States*, ––– U.S. –––, 129 S.Ct. 997, 173 L.Ed.2d 289 (2009), wherein the Supreme Court vacated a Ninth Circuit decision and remanded for reconsideration in light of *Santos*, is immaterial. The Supreme Court routinely issues such orders when announcing potentially new precedent, and such an order provides no indication that the Justices believe that *Santos* applies to Petitioner's case.

house, Miami, Florida, this 18th day of June, 2010.